JOHN LAIRD, Respondent, _v._ HENRY WITTKOWSKI and JACOB
VORHAUS, Appellants.

_Mortgage — what act of a mortgagee, in dealing with a grantee of mortgaged prem-
ises who has assumed the mortgage, releases the mortgagor — right of the mortgagor
to show the value of the mortgaged premises acquired by the mortgagee and to have
such sum applied in payment of the mortgage._

In an action brought to recover upon a bond which accompanied a purchase-
money mortgage for $2,000 it appeared that the plaintiff sold certain premises
to the defendants for $21,000, subject to a $15,000 mortgage, and took back to
secure part of the purchase price the bond and mortgage in suit; that the
defendants sold the property to one Bryant, subject to the two mortgages,
both of which Bryant assumed and agreed to pay; that the plaintiff was
informed of the sale, and that Bryant had assumed the payment of the mort-
gages; that thereafter Bryant died intestate, and that an action was brought to
partition the property; that the plaintiff was made a party to the partition suit,
but that the defendants were not; that the plaintiff, whose mortgage was not
then due, consented that it be treated as if it were due, and that the premises
be sold free from the lien of such mortgage; that the premises were sold free
and clear of the lien of plaintiff's mortgage and were purchased by him; the
order confirming the referee's report of sale permitted the referee to pay to
the plaintiff "so far as such balance will be sufficient for him to do so, the
principal sum of $2,000 secured by the mortgage * * * and * * *
upon receiving such payment the said defendant, John Laird, execute and
deliver * * * a receipt therefor and a release or discharge of said mort-
gage * * * such release * * * without prejudice to any claim or
right of action of the said John Laird for any amount which after such pay-
ment may remain unpaid upon the bond heretofore secured by his said
mortgage."

The plaintiff executed a waiver of the recording of any satisfaction piece of the
second mortgage, stating that he "being now the owner and holder, desires to
keep said mortgage in force."

It further appeared that the plaintiff received $395.16 out of the proceeds of the
sale in part payment of his mortgage.

_Held,_ that the act of the plaintiff in arranging with the Bryant estate, after hav-
ing notice that it was the principal debtor, that his mortgage should be con-
sidered as immediately due and should not be enforced against the estate, and
in releasing the land from the mortgage, thereby discharged the defendants;

That it was competent for the defendants to show what the property was actu-
ally worth and to that extent to have it applied, _pro tanto,_ in payment of the
mortgage debt.

APPEAL by the defendants, Henry Wittkowski and another, from
a judgment of the Supreme Court in favor of the plaintiff, entered

in the office of the clerk of the county of New York on the 27th day of April, 1901, upon the verdict of a jury rendered by direction of the court, and also from an order entered in said clerk's office on the 6th day of May, 1901, denying the defendants' motion for a new trial made upon the minutes.

The action was brought to recover upon a bond accompanying a purchase-money mortgage for $2,000. The plaintiff sold the premises to the defendants on April 1, 1897, for $21,500, subject to a mortgage of $15,000, taking back as part of the purchase price the $2,000 bond and mortgage referred to, payable April 1, 1900. On December 21, 1897, the defendants sold the property to George Wallace Bryant for $19,000, subject to the payment of the first mortgage of $15,000, and the plaintiff's second mortgage of $2,000, both of which Bryant assumed and agreed to pay; and the amount thereof was deducted from the consideration or purchase money. After this sale of the property by the defendants, the plaintiff was informed of the sale and that Bryant had assumed the payment of the mortgages, and subsequently plaintiff's agent collected from him the interest on the $2,000 mortgage. About the 27th of July, 1898, while still the owner of the premises, Bryant died intestate, and a partition suit was commenced in June, 1899, by one of his heirs against his widow and remaining heirs and next of kin.

In that suit the plaintiff Laird was made a party defendant; but neither of these defendants was a party thereto. Whether they knew of the pendency of the partition action until after the sale does not appear from this record, but it is stated in the defendants' briefs that they did not. The plaintiff's counsel, on the other hand, in his brief, says that when the property was sold at public sale the defendants had due notice thereof.

The referee in the partition action found that the value of the premises here involved was $18,000, and the mortgages $17,000; leaving, according to this computation, an equity of $1,000; and upon the referee's report an order for interlocutory judgment was entered on February 26, 1900, confirming it and directing the referee to sell the premises "subject to the liens of the mortgages  *  *  * or free and clear of said liens or any of them,  *  *  *  as may seem best for the interests of all parties and with the consent of the parties interested as lienors in the respective parcels."

Although the owner of the first mortgage of $15,000 insisted upon the premises being sold subject to such mortgage, the plaintiff consented that they be sold free from the lien of his mortgage; and in the record of the proceedings before the referee it was accordingly stated that "Mr. Laird, the mortgagee, will take the payment referred to in the bond and mortgage referred to, although the same is not due, at any time, with interest up to the date of payment." Thereafter at a public sale the premises were purchased by Laird for $16,500; and, as appears from the referee's report thereof, "said parcel 12 was sold free and clear of the lien of the mortgage held by the defendant John Laird."

The order confirming the referee's report of sale permits the referee to pay to John Laird, "so far as such balance will be sufficient for him to do so, the principal sum of $2,000 secured by the mortgage * * *. and * * * upon receiving such payment the said defendant John Laird execute and deliver *. * * a receipt therefor and a release or discharge of said mortgage * * * such release * * * without prejudice to any claim or right of action of the said John Laird for any amount which after such payment may remain unpaid upon the bond heretofore secured by his said mortgage." The referee's report of distribution recites that "John Laird was the purchaser of the parcel covered by his mortgage and waived the recording of any satisfaction piece thereof." The waiver, which is annexed, states that the purchaser "being now the owner and holder, desires to keep said mortgage in force." There is, also, a receipt by John Laird of $545.16, of which $395.16 is "part payment" of his mortgage.

Thereafter Laird commenced this action on the bond of the defendants who, upon the trial, besides presenting in evidence the record of the partition proceedings, offered evidence, which was rejected, of the actual value of the property. They, also, upon the trial, tendered the amount called for by the bond upon being subrogated to the plaintiff's title to the bond and mortgage, which tender was declined. The plaintiff was awarded a judgment by direction of the court for $1,801.98, from which judgment the defendants appeal.

*Louis J. Vorhaus,* for the appellant Wittkowski.

*David Gerber*, for the appellant Vorhaus.

*W. Arrowsmith*, for the respondent.

O'BRIEN, J. :

It would seem strange if the application of legal principles would justify sustaining this judgment, for the dealings of the parties and the sale of the property have given to the plaintiff Laird the consideration paid by the defendants when they bought the property from him for $21,500, the property itself, the balance of the proceeds of the sale in the partition action, the mortgage which it is claimed is still in force, and, in addition, a judgment against the defendants for $1,800.

In the suit in which the property, constituting the collateral security given with the bond, was sold and in which, as claimed, the defendants' right to redeem, or, upon payment of the mortgage debt, to be subrogated to the security, was lost, the defendants were not parties, and without their day in court have lost all rights except to pay the bond. And in the present action, if the ruling made upon the trial is sustained, they cannot tender the amount due upon the bond and mortgage and be subrogated to plaintiff's right under the mortgage as against the property itself or the estate of Bryant, and their only recourse, if any, is to pay this judgment and then seek to have the Bryant estate reimburse them in another action brought to enforce the agreement made by George Wallace Bryant, by which he assumed to pay the mortgage. The legal effect of the sale to plaintiff, as contended by his counsel, is that with respect to the property itself he has acquired the same status as would a *bona fide* purchaser for value, and that the defendants have lost all right to be subrogated to the collateral security. The learned trial judge, as stated, sustained this contention, thus in effect holding that the defendants' right to subrogation ended at the sale, and that the tender made upon the trial of the amount due under the mortgage, with the request to be subrogated, came too late.

It remains, however, to be determined whether the results mentioned and the manner in which they have been accomplished can, upon legal principles, be sustained.

When the defendants sold the property to Bryant under the agreement by which he assumed the payment of the mortgage, and

notice thereof was given to Laird, the mortgagee, the premises became as between the defendants and Bryant the primary fund for the payment of the mortgage. This, however, left entirely unaffected the plaintiff's right to resort to the bond for the collection of his debt, and the defendants could not compel him to proceed upon the bond or resort in the first instance to the land, and it did not change the defendants' relation to the debt, for, upon paying such debt either voluntarily or by compulsion, upon the doctrine of equitable subrogation, they would be entitled to be substituted to the mortgage security as it originally existed, with the right to proceed immediately against the land for their indemnity. The plaintiff could not deal with Bryant or his estate, he being the grantee of the equity of redemption, to the prejudice of the defendants' right of subrogation, without discharging them from liability for the debt either wholly or *pro tanto*.

These views are fully supported by the case of *Calvo* v. *Davies* (73 N. Y. 215) from which we have taken the language, transposing it merely so as to apply to the present litigants. That case is also authority for the proposition (as summarized in the head note), that " where a deed contains a covenant upon the part of the grantee to pay a mortgage upon the premises, executed by the grantor, the relation of principal and surety is created between the parties, and an agreement by the holder of the mortgage with the grantee to extend the time of payment, made without the consent of the grantor, discharges the grantor."

And this rule is well stated in *Marshall* v. *Davies* (78 N. Y. 421, wherein *Calvo* v. *Davies, supra,* is cited) as follows : " We have held that where the mortgagor conveys to a third party who assumes the mortgage, the relation of principal and surety arises between the mortgagor and his vendee, and that after notice of this relation the mortgagee is bound to observe it and abstain from doing any act to the prejudice of the mortgagor or which would impair his recourse against the mortgaged premises in case he should be obliged to pay his bond and be subrogated to the mortgage. *The mortgagee in such a case after notice cannot with impunity release the land* or extend the time of payment or do any other act to the prejudice of the mortgagor ; and the prohibited acts are determined by the law of principal and surety."

According to the arrangement made between the plaintiff and the Bryant estate in the partition suit, the property was to be sold free from the mortgage; the plaintiff electing to take the proceeds of the sale in lieu of his claim under the mortgage itself, and although such an arrangement may not legally have had the effect as between the defendants and the Bryant estate of releasing the latter from payment of the debt, which question we reserve, it effectually released the land from the mortgage. That arrangement did more, because the debt was not then due, and by it the plaintiff precipitated the maturity of the principal and obtained title to the property at the sale free from the mortgage. In giving his consent he in terms reserved his rights under the bond and mortgage, but as all this was without the defendants' consent or knowledge, he did not thereby destroy the legal effect of his act in dealing with the principal debtor without the assent of the defendants who were sureties, and the legal consequences could not be affected by an agreement between the plaintiff and the principal debtor, to which the defendants were not parties.

Our attention has been called to a line of cases of which *Vose v. Florida R. R. Co.* (50 N. Y. 369) is a good illustration, holding that a sale by a creditor of collateral securities placed in his hands by the principal debtor, in violation of his stipulation to give a particular notice of sale, contained in the contract, under which they were pledged, does not *per se* discharge *in toto* the surety, who is liable for the debt; but, by such sale, the creditor makes the securities his own to the extent of discharging the surety to an amount equal to their value. If, however, that rule were applied in the case at bar, this judgment could not be sustained, because, if we should hold that all that was done by the plaintiff was merely to deal with the collateral security as his own, it here appears that evidence offered by the defendants (in addition to what appears from the referee's report and from the consideration paid by the respective purchasers) to show just what was the actual value of the property was excluded, due exception being taken to such ruling.

Under the plaintiff's theory, therefore, this judgment cannot stand, because, having by the arrangement between himself and the principal debtor, in the absence of the sureties, released the property

and permitted it to be sold free from the mortgage, he treated it as though it were his own, and under the rule to which we have referred, it was entirely competent for the defendants to show what the property was really worth and to that extent to have it applied *pro tanto* in payment of the mortgage debt. It follows that the judgment should be reversed, if for no other reason than because of the rulings excluding the evidence offered of the value of the mortgaged premises.

We think, however, that the legal consequences of the manner in which the plaintiff dealt with the property and the debt were even more serious; for, after notice that the Bryant estate was the principal debtor, in arranging with it that the debt should be considered as immediately due and should not be enforced against that estate, and in releasing the land from the mortgage, he thereby discharged the defendants who, as stated, stood in the position of sureties.

We have assumed in this discussion that, as the defendants were not parties to the partition action, and, so far as appears, in no other way received actual notice of the arrangement made by the plaintiff therein or of the proceedings themselves leading down to and including the sale, they were deprived of all opportunity to protect their rights either by paying the debt and being subrogated to the collateral security, or, upon the sale, seeing to it that the property brought its full value. Upon a new trial the facts may be brought out more fully, and we think, therefore, that the proper disposition to make is to reverse the judgment and order entered and to order a new trial, with costs to the appellant to abide the event.

VAN BRUNT, P. J., PATTERSON, McLAUGHLIN and LAUGHLIN, JJ., concurred.

Judgment and order reversed, new trial ordered, costs to appellant to abide event.